UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| Clarice Notley, Ethan Schaffer, Zhaochuan Wang, Eric Cooper, Derrick Palmer, Alaa Shaaban on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | Demand for Jury Trial |
| **Marriott International, Inc.** a Delaware Corporation, | |
| Defendant. | |

## Class Action Complaint

Clarice Notley, Ethan Schaffer, Zhaochuan Wang, Eric Cooper, Derrick Palmer, Alaa Shaaban ("Plaintiffs"), individually and on behalf of a class of persons similarly situated (the "Class") bring this class action against Defendant Marriott International, Inc. ("Marriott" or "Defendant") seeking equitable relief and damages as set forth below.

## SUMMARY

1.      In today's cyber world, data is king. "[D]ata is the new oil..." declares the Washington Post[1]. "But personal data belongs more to consumers than the companies who use it for profit."[2]

---

[1] Washington Post, "The Marriott data breach is a reminder that privacy concerns extend beyond tech," (Dec. 1, 2018, 3:28 p.m.), https://www.washingtonpost.com/opinions/the-marriott-data-breach-is-a-reminder-that-privacy-concerns-extend-beyond-tech/2018/12/01/04bc4f62-f4db-11e8-aeea-b85fd44449f5_story.html?noredirect=on&utm_term=.da8ea289d32f (last visited Dec. 1, 2018).
[2] *Id.*

2.      Marriott, unfortunately, did not respect the consumers' right to the security of their data.

3.      Customers staying at one of Marriott Hotels International's ("Marriott") Starwood resorts or hotels expect a safe and secure experience. As a part of the deal, they provide Marriott with their personally identifiable information ("PII") including their name, address, phone number(s), email address(es), passport number, date of birth, gender, arrival and departure information, reservation date, and payment card information. In return, Marriott promises "to use reasonable organizational, technical and administrative measures to protect Personal Data."[3]

4.      That was a hollow promise. On November 30, 2018, Marriott confessed to a major data breach—one that spanned *4 years* and up to *500 million customers* of Starwood Hotels[4], a wholly owned subsidiary of Marriott.[5]

5.      Marriott's lax data security allowed hackers to access Marriot's customer database for 4 years with no interference or detection. They stole information on every reservation at a Starwood Hotels property from some time in 2014 to September 10, 2018.[6] Marriott failed to adequately protect their customers' PII, and, as such, hackers potentially obtained the name, address, phone number(s), email address(es), passport number, Starwood Preferred Guest information, date of birth, gender, arrival and departure information, reservation date, and payment card information of those

---

[3] Marriott Online Privacy Policy | Hotel Privacy Policy Information, www.marriott.com, https://www.marriott.com/about/privacy.mi (last visited Nov 30, 2018).
[4] Erik Ortiz, "Marriott says data breach compromised info of up to 500 million guests" NBCNews.com (2018), https://www.nbcnews.com/tech/security/marriott-says-data-breach-compromised-info-500-million-guests-n942041 (last visited Nov 30, 2018).
[5] Halah Touryalai, "World's Largest Hotels 2018: Marriott Dominates, Hyatt & Accor Rise" Forbes (2018), https://www.forbes.com/sites/halahtouryalai/2018/06/06/worlds-biggest-hotels-2018/#3012d52647c7 (last visited Nov 30, 2018).
[6] Erik Ortiz, "Marriott says data breach compromised info of up to 500 million guests" NBCNews.com (2018), https://www.nbcnews.com/tech/security/marriott-says-data-breach-compromised-info-500-million-guests-n942041 (last visited Nov 30, 2018).

customers.[7]

6.       As noted in the Honolulu Star Advisor, "The data stolen from the Marriott hotel empire in a massive breach is so rich and specific it could be used for espionage, identity theft, reputational attacks and even home burglaries, security experts say."[8]

7.       Jesse Varsalone, a University of Maryland cybersecurity expert, said, "There are just so many things you can extrapolate from people staying at hotels..."[9] And because the data included reservations for future stays, along with home addresses, burglars could learn when someone wouldn't be home, said Scott Grissom of LegalShield, a provider of legal services[10].

8.       Even before this breach, Marriott was already well aware of its porous data security. In 2015, shortly after Marriott began merger negotiations with Starwood, Starwood reported a data breach that affected over 50 of its properties.[11] The hackers in that instance were able to stay within Starwood's systems for over a year before detection.[12] They were able to steal payment information from their gift shop and other point of sale kiosks on the affected Starwood properties.[13] Yet Marriott either ignored or failed to fix the problem.

9.       To make matters worse, Marriott knew about this most recent data breach for over two months before informing their guests. Eventually, Arne Sorenson, Marriott's President and Chief Executive Officer, issued a statement admitting,

---

[7] Zack Whittaker, "Marriott says 500 million Starwood guest records stolen in massive data breach" TechCrunch (2018), https://techcrunch.com/2018/11/30/starwood-hotels-says-500-million-guest-records-stolen-in-massive-data-breach/ (last visited Nov 30, 2018).
[8] Associated Press, "Possible risks from Marriott's massive data breach? Espionage and ID theft" Honolulu Star Advisor (2018), http://www.staradvertiser.com/2018/12/01/breaking-news/possible-risks-from-marriott-massive-data-breach-espionage-and-id-theft/ (last visited Dec. 1, 2018).
[9] Id.
[10] Id.
[11] Banks: "Starwood Breach Not Isolated, Bank" Information Security (2015), https://www.bankinfosecurity.com/starwood-hilton-a-8698 (last visited Nov 30, 2018).
[12] Id.
[13] Id.

although grossly understating the truth: "We fell short of what our guests deserve and what we expect of ourselves."[14]

10.     Because of Marriott's inadequate security measures and its unreasonable delay in notifying users of the breach, Plaintiff's and class members' PII has been compromised. Plaintiffs and class members have suffered harm in that their PII has lost value and they must now undertake additional security measures to minimize the risk of identity theft.

## THE PARTIES

11.     Plaintiff Clarice Notley is a resident of San Diego, California. Plaintiff made a reservation at a Starwood property on December 10, 2016. Plaintiff also booked rooms and entered her PII into Starwood's reservation system on multiple occasions between 2014 and September 10, 2018.

12.     Plaintiff Ethan Schaffer is a resident of Tampa, Florida. Plaintiff made a reservation and stayed at the Aloft Hotel in New Orleans on September 9-12, 2017. Plaintiff booked a room and entered his PII into Starwood's reservation system.

13.     Plaintiff Zhaochuan Wang is a resident of Gainesville, Florida. Plaintiff made a reservation and stayed at the Westin Beach Resort Fort Lauderdale on July 8-10, 2018. Plaintiff booked a room and entered his PII into Starwood's reservation system.

14.     Plaintiff Eric Cooper is a resident of Fountain Hills, Arizona.  Plaintiff made a reservation and stayed at the Westin Phoenix Downtown on June 30 – July 1, 2018 and at the Westin Kierland on April 9-10, 2016. Plaintiff booked a room and entered his PII into Starwood's reservation system.

15.     Plaintiff Derrick Palmer is a resident of Napa, California. Plaintiff made a reservation and stayed at the Four Points by Sheraton San Francisco Bay Bridge on

---

[14] Erik Ortiz, "Marriott says data breach compromised info of up to 500 million guests" NBCNews.com (2018), https://www.nbcnews.com/tech/security/marriott-says-data-breach-compromised-info-500-million-guests-n942041 (last visited Nov 30, 2018).

February 26, 2018. Plaintiff has booked and stayed at numerous other Starwood properties from 2014 until September 10, 2018. Plaintiff has entered his PII into Starwood's reservation system.

16. Plaintiff Alaa Shaaban is a resident of Stewartsville, New Jersey. Plaintiff stayed at Le'Meriden in Atlanta, Georgia on May 13-16, 2018. Plaintiff also stayed at the Westin Portland Harborview in Portland, Maine on May 22-27, 2016. Plaintiff has booked and stayed at numerous other Starwood properties from 2014 until September 10, 2018. Plaintiff has entered his PII into Starwood's reservation system.

17. Defendant Marriott International Inc., is a Delaware corporation with its principal executive offices located at 10400 Fernwood Road, Bethesda MD 20817.

## JURISDICTION AND VENUE

18. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class members, a majority of Class Members are citizens of states that are diverse from Marriott, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Marriott has established sufficient contacts in this district such that personal jurisdiction is appropriate. Marriott is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

20. The Washington Post reports, "[C]ustomer information is key to day-to-day operations in countless industries, **and firms spend little time thinking about how to keep it safe.**"[15] That certainly holds true here.

---

[15] Washington Post, "The Marriott data breach is a reminder that privacy concerns extend beyond tech," (Dec. 1, 2018, 3:28 p.m.), https://www.washingtonpost.com/opinions/the-marriott-data-breach-is-a-reminder-that-privacy-concerns-extend-beyond-tech/2018/12/01/04bc4f62-f4db-11e8-aeea-b85fd44449f5_story.html?noredirect=on&utm_term=.da8ea289d32f (emphasis added).

Class Action Complaint

21.     Marriott Hotels International acquired Starwood Hotels in 2016, for $13 billion dollars, making them the largest hotel operator in the world.[16] Starwood's properties include Sheraton, St. Regis, Westin, and W hotels.

22.     As alleged above, Plaintiffs and Class members made reservations at a Starwood Hotels property and entrusted Starwood Hotels and Marriott to protect their PII.

23.     Marriott invites users to trust that it will protect their PII stating that "We seek to use reasonable organizational, technical and administrative measures to protect Personal Data."[17] Clearly this is untrue since Marriott unreasonably failed to detect a hacker siphoning all of their customers' information for over 4 years.

24.     On November 30, 2018 Marriott reported a breach of Starwood's reservation system. Hackers had been in their system stealing customer information since 2014.[18] The scope of this breach is one of the largest in history, affecting some 500 million customers. This is more than three times the size of the recent Equifax data breach.

25.     The hackers were able to copy a database that contained all of Starwood's reservation information. This included customers PII such as their names, mailing address, phone number, email address, passport number, date of birth, gender, arrival and departure information, reservation date, and for some payment card information.[19]

---

[16] CNBC, "Marriott buys Starwood, becoming world's largest hotel chain" CNBC (2016), https://www.cnbc.com/2016/09/23/marriott-buys-starwood-becoming-worlds-largest-hotel-chain.html (last visited Nov 30, 2018).

[17] Marriott Online Privacy Policy | Hotel Privacy Policy Information, www.marriott.com, https://www.marriott.com/about/privacy.mi (last visited Nov 30, 2018).

[18] Erik Ortiz, "Marriott says data breach compromised info of up to 500 million guests" NBCNews.com (2018), https://www.nbcnews.com/tech/security/marriott-says-data-breach-compromised-info-500-million-guests-n942041 (last visited Nov 30, 2018).

[19] Zack Whittaker, "Marriott says 500 million Starwood guest records stolen in massive data breach" TechCrunch (2018), https://techcrunch.com/2018/11/30/starwood-hotels-says-500-million-guest-records-stolen-in-massive-data-breach/ (last visited Nov 30, 2018).

26.     Marriott was not even able to decrypt the information that the hackers had taken for over 2 months:

> On November 19, 2018, Marriott was able to decrypt the information and determined that the contents were from the Starwood guest reservation database. We then immediately began taking steps to notify our guests and regulatory authorities[20].

27.     Marriott failed to protect their customers' data by taking any reasonable step to detect intrusions and allowed a hacker to steal customers PII for four years before detection.

28.     In addition to compromising existing accounts, the class members' PII can be used by identity thieves to open new financial accounts, incur charges in the name of Class members, take out loans, clone credit and debit cards, and other unauthorized activities.

29.     Identity thieves can also use the PII to harm the Class members in a variety of ways, including online harassment or embarrassment, or to commit different types of fraud.  A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

---

[20] Starwood Guest Reservation Database Security Incident, "Starwood Reservation Database Security Incident, https://answers.kroll.com/ (last visited Nov 30, 2018).

The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan*, at p.11 (April 2007), available at *http://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf*.

30.     To emphasize the large-scale impact of cybercrime, a study released in February 2018 by McAfee and think tank the Center for Strategic and International Studies that shows worldwide cybercrime costs an estimated $600 billion USD a year. This increased from $500 billion USD in 2014.  The new estimate amounts to 0.8 percent of global gross domestic product.[21]

31.     The data left unprotected by Marriott here is particularly valuable, and the potential risks to victims are heightened. Chris Wysopal, chief technology officer of Veracode, says that with information about someone's arrival and departure dates, "that could be used to incriminate someone" or attack someone's reputation. He says it goes beyond the traditional credit-card theft or risk of identity theft[22].

32.     Plaintiffs and Class members are at risk for identity theft in its myriad forms, potentially for the remainder of their lives

33.     The types of information compromised in this data breach are highly valuable to identity thieves. In addition to credit and debit card information, names, email addresses, recovery email accounts, telephone numbers, birthdates, passwords and security question answers can all be used to gain access to a variety of existing accounts and websites.

34.     Identity thieves can also use the PII to harm Plaintiffs and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently

---

[21] "The Cost of Cybercrime," https://internetsociety.org/blog/2018/02/the-cost-of-cybercrime/ (last visited on October 16, 2018)

[22] Associated Press, "The Latest: Marriott data breach among largest," The New Jersey Herald (Nov. 30, 2018, 5:34 p.m.), https://www.njherald.com/article/20181130/AP/311309873# (last visited Dec. 1, 2018).

obtaining tax returns and refunds, and obtaining government benefits.

35.     In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

36.     In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

37.     The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the PII they have obtained. Indeed, to protect themselves, Class members will need to remain vigilant against unauthorized data use for years and decades to come.

38.     Once stolen, PII can be used in several different ways. One of the most common is that it is offered for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling illegal items such as weapons, drugs, and PII.  Websites appear and disappear quickly, making it a very dynamic environment.

39.     Once someone buys PII, it is then used to gain access to different areas of

the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

40.     Further, an individual's PII has market value and there are markets for that PII. For example, data collection companies, credit reporting companies, and companies that engage in targeted advertising are all willing to pay money to obtain, directly or indirectly, PII from individuals. Indeed, many email and social media service providers require their users to consent to having their information scanned and recorded for the purpose of selling that information to advertisers. But, the theft of that PII and unauthorized sale of it on the "dark web" diminishes its legitimate market value.

41.     Marriott Customers whose PII has been unlawfully accessed or stolen can—and should—sign up for credit protection services immediately. Such services cost money, however.

CLASS ACTION ALLEGATIONS

42.     Plaintiffs brings this lawsuit on behalf of themselves and as a class action on behalf of a proposed national class, defined as:

> All persons in the United States who made a reservation at a Starwood hotel from 2014 through September 10, 2018 and whose personal information was accessed, compromised, or stolen from Starwood hotels in the data breach that was announced on November 30, 2018.

43.     Plaintiffs Clarice Notley and Derrick Palmer also brings this lawsuit on behalf of themselves and as a California subclass, defined as:

> All persons in the State of California who made a reservation at a Starwood hotel from 2014 through September 10, 2018 and whose personal information was accessed, compromised, or stolen from Starwood hotels in the data breach that was announced on November 30, 2018.

44.     Plaintiff Eric Cooper also brings this lawsuit on behalf of himself and as a Arizona subclass, defined as:

> All persons in the State of Arizona who made a reservation at a Starwood hotel from 2014 through September 10, 2018 and whose personal information was accessed, compromised, or stolen from Starwood hotels in the data breach that was announced on November 30, 2018.

45.     Plaintiffs Zhaochuan Wang and Ethan Schaffer also brings this lawsuit on behalf of themselves and as a Florida subclass, defined as:

> All persons in the State of Florida who made a reservation at a Starwood hotel from 2014 through September 10, 2018 and whose personal information was accessed, compromised, or stolen from Starwood hotels in the data breach that was announced on November 30, 2018.

46.     Plaintiff Alaa Shaaban brings this lawsuit on behalf of himself and as a New Jersey Subclass, defined as:

> All persons in the State of New Jersey who made a reservation at a Starwood hotel from 2014 through September 10, 2018 and whose personal information was accessed, compromised, or stolen from Starwood hotels in the data breach that was announced on November 30, 2018.

47.     Collectively, the national class, Arizona subclass, Florida subclass, New Jersey subclass, and California subclass will be referred to as "the Class."

48.     Excluded from the Class are Defendants and any entities in which Defendant or their subsidiaries or affiliates have a controlling interest; Defendant's officers, agents, and employees; attorneys for Plaintiffs and the Class; the judicial officer

to whom this action is assigned and any member of the Court's staff and immediate families; as well as claims for personal injury, wrongful death, and emotional distress.

49. **Numerosity:** The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably believe that Class members number millions of people. As such, class members are so numerous that joinder of all members is impractical. The names and addresses of class members are identifiable through documents maintained by Marriott.

50. **Commonality** and **Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

    a. Whether Defendant engaged in the wrongful conduct alleged herein;

    b. Whether Defendant's inadequate data security measures were a cause of the data breach;

    c. Whether Defendant owed a legal duty to Plaintiffs and the other Class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

    d. Whether Defendant negligently or recklessly breached legal duties owed to Plaintiffs and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

    e. Whether Plaintiffs and the Class are at an increased risk for identity theft because of the data breach;

    f. Whether Plaintiffs and the Class have suffered a decrease in the value of their PII because of the data breach;

    g. Whether Plaintiffs and the Class have suffered benefit of the bargain losses because of the data breach;

    h. Whether Defendant's conduct violated Cal. Bus. & Prof. Code § 17200 *et seq.*;

i.  Whether Defendant's conduct violated Cal. Civ. Code § 1798.80 *et seq.*;

j.  Whether Plaintiffs and the other class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

k.  Whether Plaintiffs and the other class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

51.    These issues not only predominate, but they are also matters appropriate for issue certification under Rule 23(c)(4).

52.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

53.    **Typicality:** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct by Marriott. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and there are no defenses that are unique to Plaintiffs.

54.    **Adequacy of Representation:** Plaintiffs are an adequate representative of the class because their interests do not conflict with the interests of the other class members they seeks to represent; they have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

55.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other

Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for class members to individually seek redress for Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### Negligence

### (On behalf of the Nationwide Class)

56.     Plaintiffs repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55, as though fully stated herein.

57.     Marriott owed a duty to Plaintiffs and the other Class members to exercise reasonable care in safeguarding and protecting their PII that was in its possession from being compromised, lost, stolen, misused, or disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure that Plaintiff's and the other Class members' PII was adequately secured and protected. Defendant further had a duty to implement processes that would detect a breach of their security system in a timely manner.

58.     Marriott also had a duty to timely disclose to Plaintiffs and the other Class members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that, among other things, Plaintiffs and the other Class members could take appropriate measures to cancel or change usernames, pin numbers, and passwords on compromised accounts, to begin monitoring their accounts for unauthorized access, to contact the credit bureaus to request freezes or place alerts

and take any and all other appropriate precautions.

59.      By being entrusted by Plaintiffs and the Class to safeguard their PII, Marriott had a special relationship with Plaintiffs and the Class. Plaintiffs and the Class signed up for Defendant's services and agreed to provide their PII with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiffs and the Class of any breaches or other security concerns that might call for action by Plaintiffs and the Class. But, Defendant did not. Defendant not only knew their data security was inadequate, they also knew they didn't even have the tools to detect and document intrusions or exfiltration of PII. Marriott is morally culpable, given its repeated security breaches, wholly inadequate safeguards, and refusal to notify Plaintiffs and the Class of breaches or security vulnerabilities.

60.      Marriott breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information; allowing unauthorized access to Plaintiffs' and the other Class members' PII stored by Defendant; and failing to recognize in a timely manner the breach.

61.      Marriott breached its duty to timely disclose that Plaintiffs' and the other Class members' PII had been, or was reasonably believed to have been, stolen or compromised.

62.      Marriott's failure to comply with industry regulations and the delay between the first vulnerability date and the date Marriott informed users of the data breach further evidence Marriott's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII.

63.      But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the other Class members, their PII would not have been compromised, stolen, and viewed by unauthorized persons.

64.      The injury and harm suffered by Plaintiffs and the other Class members

was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII. Defendant knew or should have known that their systems and technologies for processing and securing Plaintiffs' and the other Class members' PII had security vulnerabilities.

65.     As a result of Defendant's negligence, Plaintiffs and the other Class members incurred economic damages, including expenses for credit monitoring, fraudulent charges on credit card or bank accounts, forged IRS returns, loss of use and value of their debit and/or credit cards, and other identity theft-related damages.

## SECOND CAUSE OF ACTION

### Misrepresentation

### (On behalf of the nationwide class)

66.     Plaintiffs repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully stated herein.

67.     As outlined above, Marriott's advertising and privacy policies contained numerous omissions and misrepresentations, regarding the supposed secure nature of their data security for Plaintiffs' PII. Such omissions and representations were false because Marriott utilized failed to disclose that they did not use reasonable, industry-standard means, to safeguard against hacking and theft of Plaintiffs' PII.

68.     Such representations and omissions were material to Plaintiffs, who reasonably relied on the representations and omissions. Plaintiffs and other members of the Class would not have agreed to turn over their PII, had they known the truth: that Marriott's services were not as secure as represented or secure by any standard.

69.     Marriott intended that Plaintiffs and other Class members rely on their security representations and omissions, as they knew no would-be customer would submit PII or entrust a business to unreasonable security risks. In reliance on these representations and omissions, Plaintiffs and the Class contracted with Marriott for

lodging at Marriott's properties, and provided their PII, which was ancillary to, but not the subject of, the contracts for services.

70.     Starwood experienced a major data breach prior to the current Breach (and after), had been warned that their encryption was outdated, and their security procedures were not enough. Defendants were negligent in their representations and omissions.

71.     As a direct and proximate result of Marriott's wrongful actions and inactions, Plaintiffs and Class members have been damaged by having an increased risk of identity theft, including, but not limited to out of pocket expenses for credit monitoring.

72.     As a direct and proximate result of Marriott's negligent, and/or willful, actions and inactions, Plaintiffs and Class members experienced damage to the PII supplied to Defendants for purposes of obtaining Marriott's services, and/or being placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of Marriott's data breach on their lives.

73.     As a direct and proximate result of Marriott's negligent, and/or willful, actions and inactions, Plaintiffs and other Class members experienced damage to property that was not the subject of the contracts with Marriott, including but not limited to damage to their credit, and/or being placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Marriott's data breach on their lives.

Class Action Complaint

## THIRD CAUSE OF ACTION

### Unfair and Unlawful Business Acts and Practices

### Cal. Bus. & Prof. Code § 17200, *et seq.*

### (On behalf of the California Class)

74.     Plaintiffs repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 55, as though fully stated herein.

75.     Defendant's acts and practices, as alleged in this Complaint, constitute unfair and unlawful business practices in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

76.     By reason of the conduct alleged herein, Marriott engaged in unlawful, unfair, and deceptive practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

77.     Marriott stored Plaintiffs' and the Class members' PII in its reservation databases. Marriott represented to Plaintiffs and the Class members that its PII databases were secure and that users' PII would remain private. Marriott engaged in deceptive acts and business practices by representing on its website that, "We seek to use reasonable organizational, technical and administrative measures to protect Personal Data."[23]

78.     Marriott knew or should have known that it did not employ reasonable measures that would have kept Plaintiffs' and the other Class members' PII secure and prevented the loss or misuse of Plaintiffs' and the other Class members' PII.

79.     Marriott's representations that it would secure and protect Plaintiffs' and the other Class members' PII in its possession were facts that reasonable persons could be expected to rely upon when deciding whether to stay at a Marriott property.

---

[23] Marriott Online Privacy Policy | Hotel Privacy Policy Information, www.marriott.com, https://www.marriott.com/about/privacy.mi (last visited Nov 30, 2018).

80.     Marriott violated the Unfair and Unlawful prongs of the UCL by
misrepresenting the safety of their many systems and services, specifically the security
thereof, and their ability to safely store Plaintiffs' and Class members' PII. Marriott also
violated the UCL by failing to immediately notify Plaintiffs and the other Class
members of the data breach. If Plaintiffs and the other Class members had been notified
in an appropriate fashion, they could have taken precautions to safeguard their PII.

81.     Marriott's acts, omissions, and misrepresentations as alleged herein were
unlawful, unfair and in violation of, *inter alia*, Cal. Bus. & Prof. Code §17500 *et seq.*, and
Cal. Civ. Code § 1798.80 *et seq.*

82.     Plaintiffs and the other Class members suffered injury in fact as the result
of Defendant's failure to secure Plaintiffs' and the other Class members' PII contained in
Defendant's servers or databases.

83.     As a result of Marriott's violations of the UCL, Plaintiffs and the other
Class members are entitled to restitution and injunctive relief.

## FOURTH CAUSE OF ACTION

### Violation of the California Customer Records Act

### Cal. Civ. Code § 1798.80, *et seq.*

### (On behalf of the California Class)

84.     Plaintiffs realleges and incorporates by reference the allegations in
paragraphs 1 through 55 as if fully set forth herein.

85.     Plaintiffs brings this cause of action on behalf of the California Class
whose personal user information is maintained by Marriott and which was
compromised.

86.     "[T]o ensure that personal information about California residents is
protected," the California Legislature enacted Civil Code § 1798.81.5, which requires
that any business that "owns, licenses, or maintains personal information about a
California resident shall implement and maintain reasonable security procedures and

practices appropriate to the nature of the information, to protect the personal
information from unauthorized access, destruction, use, modification, or disclosure."
Cal. Civ. Code § 1798.81.5(b).

87.     Marriott is a "business" within the meaning of Civil Code § 1798.80(a).

88.     Plaintiffs and members of the Class are "individual[s]" within the
meaning of the Civil Code § 1798.80(d). Pursuant to Civil Code § 1798.80(e), the user
information is "personal information," which includes, but is not limited to, an
individual's name, physical characteristics or description, address, telephone number,
education, employment, employment history, and medical information.

89.     The breach of the personal information of 500 million Marriott customers
constituted a "breach of the security system" of Marriott pursuant to Civil Code §
1798.82(g).

90.     By failing to implement reasonable measures to protect its users'
information, Marriott violated Civil Code § 1798.81.5.

91.     As alleged above, Marriott unreasonably delayed informing anyone about
the breach of security of Plaintiffs' and other Class members' confidential and non-
public PII after Defendant knew the breach had occurred.

92.     Marriott failed to disclose to Plaintiffs and other Class members, without
unreasonable delay, and in the most expedient time possible, the breach of security of
their unencrypted, or not properly and securely encrypted PII, and when they knew or
reasonably believed such information had been compromised.

93.     Upon information and belief, no law enforcement agency instructed
Marriott that notification to Plaintiffs or other Class members would impede its
investigation.

94.     Accordingly, Plaintiffs requests that the Court enter an injunction
requiring Marriott to implement and maintain reasonable security procedures to protect
its users' personal information in compliance with the California Customer Records

Act. Plaintiffs requests that the Court require Marriott to identify and notify all members of the Class who have not yet been informed of the breach.

95.     As a result of Marriott's violations of California Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and members of the Class have and will incur economic damages relating to time and money spent remedying the breach, such as monitoring their online presence to ensure that their identity has not been stolen or coopted for an illicit purpose.

96.     Plaintiffs, for themselves and on behalf of the members of the Class, seek all remedies available under California Civil Code § 1798.84, including, but not limited to damages suffered by members of the Class and equitable relief.

97.     Plaintiffs, for themselves and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under applicable law including California Code of Civil Procedure §1021.5 and Federal Rule of Civil Procedure 23.

## FIFTH CAUSE OF ACTION

### Violation Of Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, Et Seq.

### (On behalf of the Arizona Subclass)

95.     Plaintiff Eric Cooper ("Plaintiff," for purposes of this Count), individually and on behalf of the Arizona Subclass, repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

96.     Marriott is a "person" as defined by A.R.S. § 44-1521(6).

97.     Marriott advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

98.     Marriott engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

99.     Marriott's representations and omissions were material because they were likely to deceive reasonable consumers.

100.    Marriott intended to mislead Plaintiff and Arizona Subclass members and induce them to rely on its misrepresentations and omissions.

101.    Marriott's representation that "We seek to use reasonable organizational, technical and administrative measures to protect Personal Data" is deceptive because they did not use any reasonable effort to protect personal data. Plaintiff and the Subclass members acted reasonably in relying on Marriott's misrepresentations and omissions, the truth of which they could not have discovered.

102.    Marriott acted intentionally and knowingly to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiff and Arizona Subclass members' rights. Marriott's knowledge of its data security policies were not as it advertised.

103.    As a direct and proximate result of Marriott's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including a heightened risk of identity theft as hackers have already absconded with their PII.

104.    Plaintiff and Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; injunctive relief; and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### Violations of Florida Deceptive And Unfair Trade Practices Act

### Fla. Stat. §§ 501.201, et seq.

### (On behalf of the Florida Subclass)

105.    The Florida Plaintiff(s) Zhaochuan Wang and Ethan Schaffer ("Plaintiffs," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

Class Action Complaint

106.   Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

107.   Marriott advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

108.   Marriott engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

109.   Marriott's representations and omissions were material because they were likely to deceive reasonable consumers.

110.   Marriott's representation that "We seek to use reasonable organizational, technical and administrative measures to protect Personal Data" Is deceptive because they did not use any reasonable effort to protect personal data. Plaintiffs and the Subclass members acted reasonably in relying on Marriott's misrepresentations and omissions, the truth of which they could not have discovered.

111.   As a direct and proximate result of Marriott's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including a heightened risk of identity theft as hackers have already absconded with their PII.

112.   Plaintiffs and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## SEVENTH CAUSE OF ACTION

### Violations of New Jersey Consumer Fraud Act

### N.J. Stat. Ann. §§ 56:8-1, *et seq.*

### (On Behalf of New Jersey Subclass)

113.   The New Jersey Plaintiff Alaa Shaaban identified above ("Plaintiff," for

purposes of this Count), individually and on behalf of the New Jersey Subclass, repeats and re-alleges the allegations in paragraphs 1 through 55 as if fully set forth herein.

114.    Marriott is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

115.    Marriott sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) &(e).

116.    The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

117.    Marriott's representations and omissions were material because they were likely to deceive reasonable consumers.

118.    Marriott intended to mislead Plaintiff and New Jersey Subclass members and induce them to rely on its misrepresentations and omissions.

119.    Marriott acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded Plaintiff and New Jersey Subclass members' rights. Marriott's security procedures and data policies were not as they were advertised to be.

120.    As a direct and proximate result of Marriott's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including an increased risk of identity theft and actual monetary costs associated with increased credit monitoring.

121.    Plaintiff and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, respectfully requests that this Court enter an Order:

(1) Certifying the proposed Class, and appointing Plaintiffs as Class Representative;

(2) Finding that Defendant's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(3) Enjoining Defendant from engaging in further negligent, deceptive, unfair, and unlawful business practices as alleged herein;

(4) Awarding Plaintiffs and Class members actual, compensatory, and consequential damages;

(5) Awarding Plaintiffs and Class members statutory damages and penalties, as allowed by law;

(6) Awarding Plaintiffs and Class members restitution and disgorgement;

(7) Awarding Plaintiffs and Class members pre-judgment and post-judgment interest;

(8) Awarding Plaintiffs and Class members reasonable attorneys' fees, costs, and expenses; and

(9) Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Class, hereby demands a trial by jury as to all matters so triable.

Respectfully Submitted,
By their attorneys,

/s/ Bruce M. Plaxen
Bruce M. Plaxen (Federal Bar #05378)
David A. Muncy (Federal Bar #18861)
Plaxen & Adler, P.A.
10211 Wincopin Circle
Suite 620
Columbia, MD 21044
(410) 730-7737
bplaxen@plaxenadler.com
dmuncy@plaxenadler.com


/s/ Gayle M. Blatt
Gayle M. Blatt (Federal Bar #122048)
Casey, Gerry, Schenk, Francavilla,
Blatt & Penfield, LLP
110 Laurel Street
San Diego, CA 92101
*(pending pro hac vice admission)*

Dated:  December 7, 2018